**ORIGINAL**

# In the United States Court of Federal Claims

No. 15-658C

(Filed: January 29, 2018)

**FILED**
**JAN 29 2018**
U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

JOSEPH ANORUO,

      Plaintiff,

v.

THE UNITED STATES,

      Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Education Debt Reduction Program; Student Loan Repayment Program; Motion to Dismiss; Statute of Limitations; Accrual of Cause of Action.

*Dr. Joseph Anoruo,* Las Vegas, Nevada, *pro se* plaintiff.

*Jessica L. Cole,* Trial Attorney, with whom were *Benjamin C. Mizer,* Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.,* Director, and *Scott D. Austin,* Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for Defendant.

<u>OPINION AND ORDER</u>

Plaintiff Joseph Anoruo is a *pro se* litigant seeking reimbursement for student loan debt which he claims was promised him when he agreed to take a position with the U.S. Department of Veterans Affairs ("VA") as a clinical pharmacist. The Government has filed a motion to dismiss for lack of subject matter jurisdiction under this Court's Rule 12(b)(1), and for failure to state a claim under Rule 12(b)(6). The motion has been fully briefed and is ready for decision. For the reasons stated below, the Court GRANTS the Government's motion to dismiss.

<u>Background[1]</u>

Dr. Anoruo received his Doctor of Pharmacy Degree from Howard University and financed it through student loans. After completing his residency, he took a position as a

---

[1] All facts are taken from Plaintiff's Second Amended Complaint with Appendix ("Pl. App.") (Dkt. No. 21).

7016 3010 0000 4308 3730

clinical pharmacist with the VA Southern Nevada Healthcare System ("VASNHS"), beginning work in May 2003. Dr. Anoruo maintains that the student loan debt relief program offered by the VA was of prime importance to him in taking the position, which offered a low salary compared to other opportunities. His story of seeking debt relief through the program reveals a long history of persistence, petitions, and appeals through an often-unresponsive bureaucracy.

The Education Debt Reduction Program ("EDRP"), 38 U.S.C. § 7681 *et seq.*, authorizes the VA to make student loan debt reduction payments to employees who are in healthcare positions that are considered difficult to fill. In July 2003, VASNHS issued an Open Continuous Announcement describing the debt reduction program and the forms required to be submitted for application. Pl. App. at 7-8. Plaintiff requested and received the forms and regulations from the VASNHS Human Resources Chief, Mr. Zurfluh, that same month. After his appointment became permanent in October 2003, Dr. Anoruo submitted the EDRP paperwork to Mr. Zurfluh in February 2004, which was within the prescribed time limits, and was told by Mr. Zurfluh that the facility would transmit them to the VA's national recruitment office in New Orleans for processing. However, the application was not handled promptly: the VASNHS medical center director, Mr. Bright, did not sign the papers until six weeks after Dr. Anoruo's eligibility window had expired, and then it took another two weeks before they were forwarded to the national office, which denied it as untimely. At that time, Mr. Zurfluh gave Dr. Anoruo an incorrect reason for denial of his application, calculating his eligibility using the wrong date, which is the first time Plaintiff realized that his paperwork had not been submitted in a timely fashion. Dr. Anoruo then appealed to the national office, but it was denied based on incorrect facts about the date and timing of the original application. Mr. Zurfluh notified him of the national office denial by email on September 1, 2004. Pl. App. at 14.

Dr. Anoruo did not give up but continued to attempt to correct his record without success. In 2007, he was able to discuss his situation with the Las Vegas facility director, Mr. Bright, who tried unsuccessfully to secure reconsideration by the national office. In 2008, Mr. Bright offered to compensate Dr. Anoruo the sum of $40,000 out of local funds. Mr. Bright was contemplating use of the federal Student Loan Repayment Program ("SLRP"), 5 U.S.C. § 5379, which is a government-wide program separate from the EDRP and also designed to assist in repayment of outstanding loans. However, when the final SLRP paperwork was presented to Dr. Anoruo in 2009, the sum offered had been reduced to $13,300. Pl. App. at 35-39. This was the amount of the loan balance still outstanding on his loans, which was the maximum available under the SLRP, but substantially less than Dr. Anoruo would have received under an EDRP award.

Dr. Anoruo refused to agree to this reduced offer and continued his attempts to get satisfaction from the EDRP program headquarters. He finally received an explanation from

the Director of the national VA Healthcare Recruitment & Retention Office in a July 2011 letter acknowledging that it was the Las Vegas facility who was responsible for the late submission and resulting denial of his loan repayment award. However, the Director did not offer any help, explaining that the refusal to accept untimely applications was "the standard of practice" in 2004. As to Mr. Bright's offer to settle the matter using payment under the SLRP, the Director explained that the SLRP program is limited to the amount of loan balances outstanding at the time of award. Pl. App. at 52-53.

Dr. Anoruo also filed an unsuccessful complaint with the Equal Employment Opportunity Commission in 2010 as well as a discrimination action in U.S. District Court in 2011, which was dismissed.

Dr. Anoruo filed this action on June 25, 2015. He seeks reimbursement for his student loan debt and related costs, basing his claim on the Tucker Act, 28 U.S.C. § 1491(a)(1), as well as the Back Pay Act, 5 U.S.C. § 5596, and the federal statutes underlying EDRP and SLRP. He also claims breach of express and/or implied contracts.

## Standard of Review

In reviewing a motion to dismiss, the Court must accept as true all factual allegations submitted by the plaintiff. Bell Atlantic v. Twombley, 550 U.S. 544, 555 (2007). Accepting those allegations as true, for the plaintiff to survive dismissal, the Court must conclude that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombley, 550 U.S. at 556).

The Court must first determine that a plaintiff has established subject matter jurisdiction before proceeding to review the merits of the complaint. Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005). The jurisdiction of this Court is limited and extends only as far as prescribed by statute. Id. at 1172. It is the plaintiff's burden to show by a preponderance of the evidence that his case fits within the jurisdictional bounds of this Court. Reynolds v. Army and Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). Though *pro se* plaintiffs "are held to a less stringent standard than those of litigants represented by counsel," the Court cannot excuse a failure to meet the jurisdictional requirements. Cearley v. United States, 119 Fed. Cl. 340, 343 (2014) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). If the Court finds that it lacks subject matter jurisdiction over the complaint, it must dismiss the action. Outlaw v. United States, 116 Fed. Cl. 656, 659 (2014) (citing RCFC 12(h)(3)).

Although the Court has jurisdiction to hear claims for money damages, the Tucker Act itself "does not create a cause of action for those claims." RHI Holdings, Inc. v. United

States, 142 F.3d 1459, 1461 (Fed. Cir. 1998). Thus, a plaintiff must identify a "separate source of substantive law that creates the right to money damages" in order to invoke this Court's jurisdiction over a claim. Greenlee County, Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir. 2007) (quoting Fisher, 402 F.3d at 1172)). Absent a money-mandating source of law, a claim for money damages in this Court is not cognizable under the Tucker Act. See Albemarle Corp. v. United States, 118 Fed. Cl. 549, 556 (2014) (citing United States v. Mitchell, 463 U.S. 206, 216 (1983)); Buser v. United States, 85 Fed. Cl. 248, 255 (2009).

## Discussion

### A. The Statutes upon which Plaintiff Relies are Money-Mandating.

The Government maintains that Dr. Anoruo has not established jurisdiction of this Court because the statutes he cites are not money-mandating. However, it is clear that while the Back Pay Act alone is insufficient to establish jurisdiction, it can be used "to invoke the jurisdiction of this Court over a claim for the remittance of a wrongfully withdrawn employment benefit conferred by a statute or regulation 'covered by the Tucker Act.'" Dustin v. United States, 113 Fed. Cl. 366, 369 (2013) (quoting Worthington v. United States, 168 F.3d 24, 26 (Fed. Cir. 1999)). "The violation of such a statute or regulation effectively triggers the money-mandating effect of the Back Pay Act and permits this Court to exercise jurisdiction." Id. Both the EDRP and the SLRP statutes provide for payment of an employee benefit in specific circumstances and employ language of command such as "shall" for administering authorities to direct payment. For example, under the language governing reimbursement of student loan payments in the EDRP in 2004, "the Secretary shall make such payments at the end of the period...." 38 U.S.C. § 7683(b)(2) (2004). Similarly, under the SLRP, payments "shall be made" after agreement is reached, and this is language of command. Dustin, 113 Fed. Cl. at 369.

### B. Plaintiff's Claims under the EDRP are Barred by This Court's Statute of Limitations.

The United States also challenges jurisdiction as to the EDRP claims based on untimeliness, arguing that Plaintiff's claim for reimbursement under the EDRP statute was filed outside the statute of limitations set forth in this Court's jurisdictional statute, the Tucker Act, 28 U.S.C. § 2501.

A six-year statute of limitations exists for claims brought against the Government in this Court: 28 U.S.C. § 2501 requires that every claim over which this Court has jurisdiction "shall be barred unless the petition thereon is filed within six years after such claim first accrues." This limitation is jurisdictional in nature, and cannot be waived or extended by equitable considerations. John R. Sand & Gravel Co. v. United States, 552

U.S. 130, 134 (2008); Young v. United States, 529 F. 3d 1380, 1384 (Fed. Cir. 2008). The parties disagree as to when Dr. Anoruo's EDRP claim accrued for purposes of determining timeliness: The Government argues that Plaintiff's claim was finally denied on September 1, 2004, when Mr. Zurfluh emailed him notice of denial after appeal to the national office. Dr. Anoruo maintains that the applicable claim accrual date is July 21, 2011, the date of the letter from the Director of the national recruitment office acknowledging the late filing by the Las Vegas VA office. The Government counters that the 2011 letter is merely a courtesy explanation, "reiterating the reasons Dr. Anoruo's application was previously denied in 2004." Def.'s Rep. at 10.

A claim for relief in this Court accrues once "all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action." Ingrum v. United States, 560 F.3d 1311, 1314 (Fed. Cir. 2009). The Court finds that the six-year statute of limitations in this case began to run on September 1, 2004, when Dr. Anoruo was given firm notice that his EDRP application had been denied. Plaintiff has not pointed to any required administrative appeals which might have tolled the limitation period, and similarly cannot re-characterize the 2011 VA letter so as to regenerate his cause of action. See Martinez v. United States, 333 F.3d 1295, 1312 (Fed. Cir. 2003). Thus the six year limit was reached in 2010, five years before this suit was filed. While a strong argument can be made that Dr. Anoruo was treated unfairly by the VA, equitable considerations cannot defeat the strict jurisdictional limits set forth in this Court's statute of limitations.

C.  Plaintiff Has Failed to State a Claim upon which Relief May Be Granted

While Plaintiff's claims for relief under the EDRP are untimely, the Government has not made a timeliness challenge to Plaintiff's claims related to the SLRP reimbursement offered to him in 2008 and 2009 in place of the failed EDRP support. However, facts viewed most favorably to Plaintiff do not show that a contract, whether express or implied, for student loan aid under that statute was ever consummated. The Director offered $40,000 in 2008 to "make it right" for Dr. Anoruo, but was apparently unaware of the limits of reimbursement available under the SLRP program. Even if this offer could be seen as an oral contract for $40,000, Plaintiff has failed to show that Mr. Bright had the authority to commit the VA to this payment; in fact, the SLRP statute states that "[n]othing in this section shall be considered to authorize an agency to pay any amount to reimburse an employee for any repayments made by such employee prior to the agency's entering into an agreement under this section...." 5.U.S.C. § 5379(b)(3). The statute further requires written agreement by the employee before any payments are made. Id. § 5379(c). When the VA offered a $13,300 compromise in the form of a written offer under the SLRP the following year, Dr. Anoruo rejected it. Pl. App. at 33-39. Clearly, Plaintiff's

right to a payment under the SLRP was never established and cannot be enforced by this Court.

## Conclusion

This case recounts a long history of unfair bureaucratic treatment of a valued employee, but it also illustrates the strict requirements a plaintiff must satisfy in order to secure a waiver of sovereign immunity by the Government. For the above reasons, the Government's motion to dismiss is GRANTED. The Clerk of Court shall enter judgment accordingly. No costs.

IT IS SO ORDERED.

THOMAS C. WHEELER
Judge